[Crim. No. 19195. First Dist., Div. Four. Apr. 22, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
JAY DONALD KNIGHTEN, Defendant and Appellant.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Phyllis J. Hamilton, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Robert R. Granucci, and Herbert Wilkinson, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**CHRISTIAN, J.**—Jay Donald Knighten appeals from a judgment of imprisonment which was rendered after a jury found him guilty of sale of cocaine (Health & Saf. Code, § 11352).

There is no challenge to the sufficiency of the evidence. The prosecution's evidence may be summarized as showing that a citizen volunteer, Alison Seever, arranged through a police officer, Schepp, for police surveillance of a planned cocaine transaction between appellant and Seever. Appellant sold cocaine to Seever and was immediately arrested. The jury rejected appellant's entrapment defense.

The information contained allegations that appellant had suffered two prior felony convictions. At first, appellant denied the priors. At a later hearing, the court ruled that the priors would not be admissible for the purpose of impeachment (see *People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1]) but that they could be used for the purpose of enhancing the penalty if appellant were found guilty. Before trial commenced, appellant admitted the priors.

■ On appeal appellant contends, citing *In re Yurko* (1974) 10 Cal.3d 857 [112 Cal.Rptr. 513, 519 P.2d 516], that the admission of priors was ineffective because the court did not expressly and specifically inform appellant of the constitutional rights being waived by an admission and because there was no advice concerning the precise increase in penalty which might result. (See *In re Yurko, supra,* 10 Cal.3d at p. 864.) The record supports this contention. The Attorney General points out that the validity of the priors was contested in pretrial hearings, and suggests an inference that appellant must have been aware of his rights and of the adverse consequences of admitting the priors. *Yurko* does not permit use of such a process of inference to dispense with the requirement that an explicit statement of rights and of the consequences of any ensuing waiver must be placed on the record. The priors resulted in a two-year enhancement of appellant's term.

Hence, it cannot be held that the error was not prejudicial. (See *People v. Fisk* (1975) 50 Cal.App.3d 364 [123 Cal.Rptr. 414].) The cause must therefore be remanded to the trial court for further proceedings to determine the validity of the alleged prior convictions. (See *In re Sanchez* (1979) 89 Cal.App.3d 631 [152 Cal.Rptr. 681].)

Appellant also contends that it was error for the trial judge to enter the jury room, during deliberation, ostensibly to clarify a request from the jury for rereading of certain testimony. The judge's conversation in the jury room was not reported and appellant and counsel were not present. ■ Unquestionably the procedure adopted by the trial judge was error: Any private communication between judge and jury is improper (cf. *Paulson v. Superior Court* (1962) 58 Cal.2d 1, 7 [22 Cal.Rptr. 649, 372 P.2d 641]; *People v. Woods* (1950) 35 Cal.2d 504, 512 [218 P.2d 981]; *People v. Alcalde* (1944) 24 Cal.2d 177, 189 [148 P.2d 627]; *People v. Fiore* (1959) 176 Cal.App.2d 536, 540 [1 Cal.Rptr. 351]), and, in context, the communication in this action also directly violated Penal Code section 1138.[1] It is obviously critically important that a defendant and his attorney be permitted to participate in decisions as to what testimony is to be reread to the jury; the essence of the error in this action is its tendency to deprive the defendant of his fundamental constitutional right to the assistance of counsel at this critical stage of the proceedings. (Cf. *People v. Dagnino* (1978) 80 Cal.App.3d 981, 986 [146 Cal.Rptr. 129]; *In re Lopez* (1970) 2 Cal.3d 141, 145 [89 Cal.Rptr. 614, 474 P.2d 430]; *United States v. Wade* (1967) 388 U.S. 218, 224-225 [18 L.Ed.2d 1149, 1155-1156, 87 S.Ct. 1926].) ■ The potential significance of the error is arguably sufficient to negate the waiver which would otherwise be implicit in appellant's failure to make any objection in the trial court, either when the judge first disclosed the communication or as part of appellant's subsequent motion for a new trial. (Cf. *People v. House* (1970) 12 Cal.App.3d 756, 765-766 [90 Cal.Rptr. 831], disapproved as to unrelated issue in *People v. Beagle, supra*, 6 Cal.3d at p. 451; *Hale v. Morgan* (1978) 22 Cal.3d 388, 394 [149 Cal.Rptr. 375, 584 P.2d 512].) It remains to be determined whether the error requires reversal.

---

[1]Penal Code section 1138 provides: "After the jury have retired for deliberation, if there be any disagreement between them as to the testimony, or if they desire to be informed on any point of law arising in the case, they must require the officer to conduct them into court. Upon being brought into court, the information required must be given in the presence of, or after notice to, the prosecuting attorney, and the defendant or his counsel, or after they have been called."

■ Because the error implicit in private communication between judge and jury at a critical stage of the proceedings is of constitutional dimension, the applicable standard of reversibility is that stated in *Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 244 L.R.3d 1065]: "[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." Application of the *Chapman* standard to cases such as this was analyzed in *People* v. *Dagnino, supra*, 80 Cal.App.3d 981. While denial of counsel at the critical stage of a criminal proceedings is not prejudicial as a matter of law, prejudice will be presumed if the denial may have affected the substantial rights of the accused. Only the most compelling showing to the contrary will overcome the presumption. The court must be able to declare a belief the denial of counsel was harmless beyond a reasonable doubt. (80 Cal.App.3d at p. 989.)

We find in the record in this action a sufficiently compelling showing that the judge's private communication with the jury did not affect appellant's substantial rights.

It had appeared from the evidence that Seever and Schepp had been acquainted, through their mutual interest in horses, before they first discussed appellant. The jury's initial request was for the testimony of Seever and of Schepp up to the point at which they first contacted one another with respect to this case. When the jury returned to open court at 5 p.m., following its visit from the trial judge, the judge seemed to believe that the jury was "not interested" in testimony as to the fact that the two witnesses had previously been "at horse shows together," but his inquiry to the jury in open court clearly shows that he was still contemplating, albeit somewhat askance, the prospect of reading back all of the testimony. The jury foreman then apparently narrowed the request somewhat, but after the jury was excused for the evening without resuming deliberation appellant's attorney made an effective argument against a selective reading of the testimony and the trial judge ultimately concluded that "[w]e'll read the entire testimony. Don't bother. We'll just read the whole stupid thing."

In the morning Schepp's testimony was read to a point at which the jury stated that it had heard what it wanted. The judge then asked whether the jury wished to hear any of Seever's testimony. A juror stated that he would like to hear some of it, and the judge pointed out that there was a concern that Seever's testimony had varied from part to

part and that for that reason all of it would have to be read. The juror did not want to hear all of it. There was then an unreported conference at bench. What happened next is unclear from the record: A room was made available for further reading, but then the jury apparently simply went out to continue its deliberation. When the jury next returned it had reached its verdict.

■ What *is* clear from the record is that the trial judge in proceedings in open court, following his visit to the jury room, clearly expressed to the jury his willingness to have all of the requested testimony read. Defense counsel fully participated in these proceedings and his suggestions and objections were carefully heeded. In light of these proceedings we conclude beyond a reasonable doubt that the error implicit in the trial judge's visit to the jury room was harmless.

The judgment of conviction of sale of cocaine is affirmed. That part of the judgment declaring the existence of appellant's two prior felony convictions is reversed. The cause is remanded with directions to re-arraign appellant on the alleged prior convictions, to take further proceedings to determine the validity of the priors, and to resentence appellant at the conclusion of such further proceedings.

Caldecott, P. J., and Poché, J., concurred.

A petition for a rehearing was denied May 16, 1980. Poché, J., was of the opinion that the petition should be granted. Appellant's petition for a hearing by the Supreme Court was denied June 19, 1980.