[Crim. No. 42712. Second Dist., Div. Two. July 7, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
ALFRED JOSEPH NUNEZ, Defendant and Appellant.

698

COUNSEL

Seymour I. Cohen, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Susan Lee Frierson and Pamela M. Nelson, Deputy Attorneys General, for Defendant and Respondent.

OPINION

ROTH, P. J.—On October 28, 1981, Mrs. Rosa Pico was sitting in her kitchen at approximately 1:30 in the afternoon counting $250 she had received from her employment when she heard a knock at the front door. She looked out the window adjacent to the door and saw a woman, appellant's wife, sitting in a station wagon parked at the curb. As she opened the door, Mrs. Pico was accosted by appellant who told her that if she did not let him in he was going to kill her. Appellant then came into the kitchen, grabbed

the money which was on the breakfast bar and left in the car that Mrs. Pico had observed. Mrs. Pico first ran outside, then immediately returned to her home and called the police, who arrived in five minutes.

The day after the robbery, appellant called Mrs. Pico and said that he was sorry what had happened, that his little girl was sick and he needed money and that he would return the money if Mrs. Pico did not go to court. When Mrs. Pico pursued criminal proceedings against appellant, he again called her, saying he was going to sue her and that he was going to send someone to burn her house.

Roberto Pico, Rosa Pico's husband, also received a call from appellant the evening of the robbery or the evening after, wherein appellant stated he was sorry about the robbery, that he needed money for his sick baby, but that he would pay the money back. When Mr. Pico inquired, "Why did you have to come over to my house and point the gun at my wife and get the money from my wife?," appellant repeated his apology without denying the accusation.

In another call some three days later, appellant said that he would send a lady with the money but no one ever came. After his wife appeared in court on this matter, Mr. Pico received more calls from appellant in all of which appellant denied he had robbed Mrs. Pico but threatened retaliation on account of his arrest.

Based on the foregoing, a jury found appellant guilty of robbery[1] and he was sentenced to state prison for a term of five years.

On the appeal it is contended that:

1. Appellant was denied effective assistance of counsel, in that:

(a) his attorney was absent during and uninformed about certain proceedings conducted at the time of jury deliberation;

(b) his attorney failed to have appellant present for three days while the case was trailed; and

(c) a requisite *Beagle** motion was not made.

---

[1] An allegation appellant had used a pistol during commission of the offense was found not to be true.

*(See *People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1].)

2. The evidence is insufficient to establish the element of force and fear necessary to a conviction for robbery.

3. Appellant was denied a fair hearing by the court's failure to inquire as to the grounds for a claimed conflict with counsel.

4. Appellant was not given good time/work time credit pursuant to Penal Code section 4019.

■ Respecting the first of these claims, that having to do with the absence of counsel during jury deliberations, which we view as incorporating the assertion appellant was denied his constitutional right to counsel, the record discloses the following.

On its first day of deliberation, the jury retired at 9:30 a.m. At 10:55 a.m. the panel returned to the courtroom, at which time the trial court announced that one of the jurors was ill and had been excused. An alternate was seated and the jury was instructed it was required to begin its deliberations anew.[2] It was also told appellant's counsel, who was absent, had been excused to pursue other duties and that her absence was not to be construed as an abandonment of her client. In response to a question posed by the triers of fact there was then read to the jury certain testimony of Rosa Pico and appellant. The jury again retired at 11:05 a.m.

At 2:10 p.m. the same day, the panel reentered the courtroom to hear reread the testimony of Roberto Pico respecting appellant's phone calls to him as hereinabove described, and retired again at 2:17 p.m.

Some 45 minutes later, at 3:05 p.m., the jury returned its verdict, was polled and excused. Appellant's counsel was absent throughout these proceedings and was not advised of them prior to their occurrence. In this, it is said, there was error. We agree.

"The conduct of the trial court in [not] . . . notifying counsel was serious error. . . . . [Its] decision to provide evidence to the jury during deliberations, whether through the rereading of testimony or the provision of exhibits, requires the opportunity for counsel to assist his client. As was held recently in *People* v. *Knighten* (1980) 105 Cal.App.3d 128, 132 . . . 'It is

---

[2]The instruction provided that: "The People and the defendant have the right to a verdict reached only after full participation of the twelve jurors who ultimately return the verdict. This right may be assured in this case only if the jury begins its deliberations again from the beginning. You are, therefore, instructed to set aside and disregard all past deliberations and begin deliberating anew. This means that each remaining juror must set aside and disregard the earlier deliberations as if they had not taken place."

obviously critically important that a defendant and his attorney be permitted to participate in decisions as to what testimony is to be reread to the jury; the essence of the error in this action is its tendency to deprive the defendant of his fundamental constitutional right to the assistance of counsel at this critical stage of the proceedings. [Citations.]'" (*People* v. *Hogan* (1982) 31 Cal.3d 815, 848-849 [183 Cal.Rptr. 817, 647 P.2d 93]; see also *People* v. *Knighten* (1980) 105 Cal.App.3d 128 [164 Cal.Rptr. 96]; *People* v. *Dagnino* (1978) 80 Cal.App.3d 981 [146 Cal.Rptr. 129].) At the same time, "The question remains whether the denial of assistance of counsel here was prejudicial error requiring reversal." (*People* v. *Hogan, supra,* 31 Cal.3d 815, 849.) We think not.

While it is clear appellant through his counsel is vitally interested in the composition of the jury, there is nothing in the record to indicate the alternate previously found acceptable did not continue to be so. Nor does anything therein suggest the remaining jurors, which had been engaged in their duties for less than an hour and a half, failed to comply with the trial court's directive to begin their deliberations again.

Similarly, while a defendant and his attorney have a protectible interest in what testimony is to be reread to the jury, the transcript here makes clear that what was repeated was either not detrimental to appellant, or reiterated only that which was never denied by him when he took the stand in his own defense or otherwise controverted.

Thus, the substance of appellant's defense consisted of an attempt to show Rosa Pico was in fact a "fence" with whom he had conducted illicit business over a period of some four years prior to the incident in question, and that Mrs. Pico far from being the victim of a robbery by him, had instead engaged appellant to steal two television sets for her, against her voluntary payment to him of $200. In support of this theory, appellant maintained that when he saw Mrs. Pico on October 28, she had given him a key to the trunk of her car in order to provide a depository for the stolen merchandise. The reread testimony on this point, however, showed only appellant's assertion such was the case and Mrs. Pico's denial that *on a particular occasion* she had surrendered the key.

In like fashion, while there was repeated to the jury the testimony of Mr. Pico concerning appellant's phone calls to him and the adoptive admission appellant had committed the robbery, nowhere in appellant's testimony had he ever denied those phone calls or their content.

Accordingly, since it appears manifest that appellant was not prejudiced by the absence of his counsel during the jury's deliberations, we hold the

error described to have been "harmless beyond a reasonable doubt." (*Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 711, 87 S.Ct. 824, 24 A.L.R.3d 1065]; see also *People* v. *Knighten, supra,* 105 Cal.App.3d 128; cf. *People* v. *Hogan, supra,* 31 Cal.3d 815, 848-850; *People* v. *Dagnino, supra,* 80 Cal.App.3d 981.)

■ Nor was there a lack of effective assistance from or deprivation of the right to counsel shown by the claimed failure of appellant's attorney to see to it appellant was present when his case trailed for a three day period prior to trial, since the hiatus did not infringe upon the applicable time limitations specified in Penal Code section 1382[3] and the absence, so far as the record reveals, did not otherwise create prejudice. While it is true that when defendant's presence during the course of criminal proceedings would be beneficial to him, his absence constitutes a denial of due process, it is also true that the nature of any prejudice based on absence must be affirmatively demonstrated. (See *People* v. *Jackson* (1980) 28 Cal.3d 264, 310 [168 Cal.Rptr. 603, 618 P.2d 149].) No such showing was made here.

■ Finally, under this heading of error, it is maintained appellant was denied effective assistance of counsel in that no objection was made by appellant's attorney to an inquiry by the prosecution whether appellant had suffered respective convictions for possession of heroin, grand theft auto and joy riding in 1970, 1971 and 1974, the claim being the nature of the first and the remoteness of the second and third rendered them nonprobative in terms of any attempt to impeach appellant's credibility.

The contention is without merit. As pointed out by respondent and as noted hereinabove, the nature of appellant's defense was that while he may have unlawfully deprived Mrs. Pico of money, he did not do so by robbery, but at most through a deceit practiced by one criminal upon another. In establishing this version of the events, appellant's counsel, prior to any inquiry by the prosecution on the subject, elicited from appellant that he had previously been convicted of burglary, grand theft and joyriding, the clear intent of the tactic being to show appellant might very well have been dealing with Mrs. Pico on the basis he described. That the tactic failed, and that appellant's attorney did not undermine it by objecting to the prosecution's passage through a door she had intentionally opened, are, under the

---

[3]"The court, unless good cause to the contrary is shown, must order the action to be dismissed in the following cases:

" . . . . . . . . . . . . . . . .

"2. When a defendant is not brought to trial in a superior court within 60 days after the finding of the indictment or filing of the information . . . except that an action shall not be dismissed under this subdivision if it is set for trial on a date beyond the 60-day period at the request of the defendant or with his consent . . . ."

circumstances of the case, in no wise indicative of a failure on her part to act with reasonable competence as a diligent advocate. (See *People* v. *Fosselman* (1983) 33 Cal.3d 572 [189 Cal.Rptr. 855, 659 P.2d 1144]; *People* v. *Pope* (1979) 23 Cal.3d 412 [152 Cal.Rptr. 732, 590 P.2d 859].)

■ It is next contended appellant should not have been found guilty of robbery because the element of force or fear required for conviction of that crime[4] was not adequately established. In support of the assertion appellant refers us to certain alleged inconsistencies in Mrs. Pico's testimony or the lack of logical consequences associated with it as making the whole inherently improbable,[5] such that at worst appellant might have been convicted of grand theft, based on his own account of the events in question. We are likewise reminded the jury rejected the allegation appellant had used a gun in obtaining money from Mrs. Pico (see fn. 1), the suggestion apparently being that from that finding it ought further to be concluded her remaining testimony on the issue should be ignored. But that is not the law.

" 'Although an appellate court will not uphold a judgment or verdict based upon evidence inherently improbable, testimony which merely discloses unusual circumstances does not come within that category. [Citation.] To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions. [Citations.] Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.]" (*People* v. *Thornton* (1974) 11 Cal.3d 738, 754 [114 Cal.Rptr. 467, 523 P.2d 267]; see also *People* v. *Mayberry* (1975) 15 Cal.3d 143, 150 [125 Cal.Rptr. 745, 542 P.2d 1337].)

---

[4]"Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (Pen. Code, § 211.)

[5]By way of example, appellant suggest that: . . .

"3. Page 14, lines 8-9: the complaining witness testified that she never saw the appellant's wife yet on page 21 of her testimony, lines 11-19 she did indicate that she saw the appellant's wife one time when the appellant's wife asked if she wanted to buy a chain.

"4. Page 15, lines 1-4: the complaining witness testified that the appellant indicated that he was looking for money and if she didn't let the appellant in he was going to kill her. Then she further testified on lines 17-19 that he grabbed the money and then on page 16, lines 11-16 she indicated that she was running like crazy and she was screaming at the top of her lungs yet there is no mentioning anywhere that any of the neighbors came out to see what was going on and it is highly improbable that if such circumstances had occurred that the entire neighborhood would not have turned out.

"5. Page 18, lines 8-11: the complaining witness indicated that the appellant had threatened to sue her, to burn her house. It would appear illogical that if there was a robbery the robber would threaten to sue the victim. . . .

Mrs. Pico's testimony was that appellant threatened to kill her if he did not gain entry into her home and that his threats caused her to "[get] very scared." To be sure, she also testified appellant was holding a gun at the time and that contention was not found to be true by the triers of fact. In order to support a finding of force or fear, however, that is without significance, since "The jury was entitled to reject some parts of her testimony while accepting the remainder" (*People* v. *La Salle* (1980) 103 Cal.App.3d 139, 146 [162 Cal.Rptr. 816]), the "remainder" here consisting of substantial evidence sufficient for its purpose.

■ It is also urged reversible error occurred when the trial court rejected, without hearing, appellant's request for substitution of attorneys through writ of habeas corpus filed March 16, 1982, prior to sentencing but after his conviction on February 25 of that year. We are satisfied there was no error. In his petition for writ appellant specifically and in detail presented his grounds for conflict; he does not now claim that presentation was incomplete. Under such circumstances the rule that "a judge who denies a motion for substitution of attorneys . . . despite a defendant's offer to relate specific instances of misconduct, abuses the exercise of his discretion" (*People* v. *Marsden* (1970) 2 Cal.3d 118, 124 [84 Cal.Rptr. 156, 465 P.2d 44]), is without application.

Finally, it is contended appellant was not awarded good/work credit agreeably with Penal Code section 4019 and conceded by respondent that though requested by appellant, no adjudication on the point, as required, (see *People* v. *Montalvo* (1982) 128 Cal.App.3d 57, 62-63 [179 Cal.Rptr. 872] was made.

The judgment of conviction is affirmed. The matter is remanded for the trial court's finding whether appellant is entitled to the behavioral credits claimed.

Beach, J., and Gates, J., concurred.

A petition for a rehearing was denied July 20, 1983, and appellant's petition for a hearing by the Supreme Court was denied September 7, 1983.