Filed 5/3/16  In re G.C. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re G.C., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, | E064313 |
| Plaintiff and Respondent, | (Super.Ct.No. J260991) |
| v. | OPINION |
| G.C., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Erin K. Alexander and Christopher B. Marshall, Judges.  Affirmed.

MaryBeth LippSmith, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Kristen Chenelia and Scott C. Taylor, Deputy Attorneys General, for Plaintiff and Respondent.

1

Following a jurisdictional hearing, the juvenile court found true that defendant and appellant G.C. (minor) committed first degree residential burglary (Pen. Code, §§ 459, 460). Minor was thereafter declared a ward of the court and placed on probation in the custody of his father. Minor's sole contention on appeal is that the evidence was insufficient to support the juvenile court's true finding that he entered the victim's home with an intent to commit theft or any felony. We reject minor's contention and affirm the judgment.

I

FACTUAL AND PROCEDURAL BACKGROUND

On May 11, 2015, Beverly Seals lived on Sonoma Road in Adelanto. Around 10:30 that morning, she was alone in her home when she heard a thump. She believed it might be her son, a truck driver, who was living with her but had been gone for three days. She looked out a front window and did not see her son's car. However, she heard her dog barking "terribly," "hysterical[ly]," "really fiercely" outside on the north side of the house from his dog run.

Seals then investigated why her dog was barking and went to the bedroom overlooking the dog run. When Seals looked out the bedroom window, she noticed that her dog seemed to be barking at the house rather than at the fence, where he usually barked at neighborhood cats. Seals then walked toward the bathroom. The bathroom is located on the north side of the house, in the corner behind the bedroom that overlooks the dog run. Seals noticed the bathroom door was closed a little bit, which was unusual

2

because she keeps her bathroom door open. Seals opened the bathroom door, and saw minor standing in the bathtub holding a piece of window screen in his hand. She had never seen minor before.

Seals asked minor, " 'What are you doing in here?' " Minor responded, " 'David told me to do this.' " Minor also stated, " 'I didn't think nobody lived here.' " Seals asked minor how he could have believed her house was vacant when the yard had a barking dog, flowers, and a barbeque pit. After about two to three minutes of questioning minor, Seals told him that she had to call the police and exited the bathroom to retrieve her phone. Minor then ran out of the house through the front door.

A deputy responded to Seals's house and she gave the deputy a description of minor. A neighbor and her son came over to Seals's house. Together they were able to find minor's photograph on Facebook. When Seals saw the photograph, she identified minor as the person in her bathroom. Seals then contacted law enforcement and showed Deputy Molly Leiker a picture of minor. A couple days later, Deputy Leiker showed Seals a different photograph of minor, and Seals positively identified minor as the suspect. About six weeks later, Deputy Brian Walsh came to Seals's house and drove her to another location where she identified minor in person as the individual she encountered in her bathroom.

In defense, minor offered an alibi defense. He testified that he was at his aunt's house from 8:00 or 9:00 p.m. on May 10, 2015, until 12:00 p.m. on May 11, 2015, the day and time of the burglary. Minor explained that he had stayed up late in his bedroom,

playing video games with his girlfriend until they went to sleep. Minor denied that he was the person Seals found in her bathroom.

Minor's aunt purported to corroborate minor's alibi. She testified that she saw minor before he went to sleep on May 10, 2015, and that he was asleep in his bedroom until 11:30 a.m. or 12:00 p.m. on May 11, 2015.

Following argument, on July 22, 2015, the juvenile court found true that minor committed first degree residential burglary.

On August 19, 2015, the juvenile court declared minor a ward of the court and placed him on probation in the custody of his father on various terms and conditions.

On August 21, 2015, minor filed a timely notice of appeal.

II

DISCUSSION

Minor argues the evidence was insufficient to support the juvenile court's true finding that he entered the victim's home with the intent to commit theft or any felony. Rather, he postulates on appeal that he entered the victim's home as a prank or dare at the urging of his friend. We disagree.

"Where the juvenile court has sustained a petition, an attack on the sufficiency of the evidence to support that ruling is governed by the substantial evidence rule." (*In re Andrew I.* (1991) 230 Cal.App.3d 572, 577.) When a minor challenges the sufficiency of the "evidence to support the judgment, our review is circumscribed. [Citation.] We review the whole record most favorably to the judgment to determine whether there

4

is substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could have made the requisite finding under the governing standard of proof." (*In re Jerry M.* (1997) 59 Cal.App.4th 289, 298.)

Further, we review "the evidence in the light most favorable to the prosecution, [asking whether] any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. [Citation.] This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant [here, minor] has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution." (*Jackson v. Virginia* (1979) 443 U.S. 307, 319, italics omitted.)

"Whether the evidence presented at trial is direct or circumstantial, . . . the relevant inquiry on appeal remains whether *any* reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. [Citations.]" (*People v. Towler* (1982) 31 Cal.3d 105, 118-119.) " 'Although it is the duty of the jury [or trier of fact] to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury [or trier of fact], not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt. " 'If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be

reconciled with a contrary finding does not warrant a reversal of the judgment.' "
[Citations.]' [Citation.] ' "Circumstantial evidence may be sufficient to connect a
defendant with the crime and to prove his guilt beyond a reasonable doubt." '
[Citations.]" (*People v. Stanley* (1995) 10 Cal.4th 764, 792-793.)

In order to establish the crime of burglary, the prosecution must prove, as relevant
here, an unlawful entry into a residence with the intent to commit a larceny or any felony.
(Pen. Code, §§ 459, 460, subd. (a); *People v. Allen* (1999) 21 Cal.4th 846, 863, fn. 18;
*People v. Montoya* (1994) 7 Cal.4th 1027, 1051.) The crime is complete upon entry into
the defined structure with the larcenous intent, regardless of whether any theft takes
place. (*People v. Allen*, *supra*, at p. 863, fn. 18; *People v. Montoya*, *supra*, at pp. 1051-
1052; *In re Matthew A.* (2008) 165 Cal.App.4th 537, 540 ["One may be liable for
burglary upon entry with the requisite intent, regardless of whether the felony or theft
actually committed is different from that originally contemplated, or whether any felony
or theft actually is committed. [Citation.]"].)

"Because intent is rarely susceptible of direct proof, it may be inferred from all the
facts and circumstances disclosed by the evidence." (*People v. Kwok* (1998) 63
Cal.App.4th 1236, 1245; *People v. Moody* (1976) 59 Cal.App.3d 357, 363.) Many cases
have held that evidence of surreptitious entry, flight upon confrontation, and failure to
provide a reason for being on the premises constitute sufficient evidence from which a
finder of fact may infer the intent to commit theft sufficient for conviction of burglary.
(*People v. Matson* (1974) 13 Cal.3d 35, 41-42 [Our Supreme Court concluded there was

6

sufficient evidence to support a burglary conviction based on the circumstances that the defendant entered the victim's apartment surreptitiously, hid in her bathroom with the lights out, and denied having done so.]; *People v. Martin* (1969) 275 Cal.App.2d 334, 339 [Flight from the scene of a burglary, without reasonable explanation, is evidence from which intent may be inferred.]; *People v. Frye* (1985) 166 Cal.App.3d 941, 947 [codefendant made an unauthorized entry into a vacant home at 1:00 a.m. and ran out the back door after a police officer yelled, " '[F]reeze' "; the "late hour and sudden flight upon discovery support the inference [he] entered with intent to steal"]; *People v. Lopez* (1967) 249 Cal.App.2d 93, 98; *People v. Smith* (1978) 78 Cal.App.3d 698, 704 [an intent to commit theft at the time of entry may be inferred from flight from the premises].) Indeed, "[b]urglarious intent [can] be reasonably and justifiably inferred from the unlawful and forcible entry alone." (*People v. Michaels* (1961) 193 Cal.App.2d 194, 199; see *People v. Martin*, *supra*, at p. 339; *People v. Stewart* (1952) 113 Cal.App.2d 687, 690-691; *People v. Walters* (1967) 249 Cal.App.2d 547, 551 ["The felonious intent to commit theft may be inferred from the unlawful entry alone. [Citation.]"].)

"Whether the entry was accompanied by the requisite intent is a question of fact for the jury." (*People v. Kwok*, *supra*, 63 Cal.App.4th at p. 1245.) " 'An appellate court must accept logical inferences that the [finder of fact] might have drawn from the circumstantial evidence.' [Citation.] 'Before the judgment of the trial court can be set aside for the insufficiency of the evidence, it must clearly appear that on no hypothesis whatever is there sufficient substantial evidence to support the verdict of the [finder of

7

fact].' [Citation.]" (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573; see *People v. Rehmeyer* (1993) 19 Cal.App.4th 1758, 1765.)

Minor contends the evidence was insufficient to conclude he entered Seals's home with the requisite intent. Minor's quarrel with the evidence appears to be that there is no evidence to show he actually took anything or that he admitted to intending to steal anything. Rather, he believes his statement to Seals that a friend told him " 'to do this' " and his entry during daytime hours while Seals's dog barked "fiercely" supports a finding that he entered the home on a dare or as part of a prank. Minor's arguments are unavailing. Contrary to minor's suggestions, direct evidence of a suspect taking anything during a burglary or a suspect admitting to have entered a home with the intent to steal is not required. Moreover, minor's statement to Seals and the time of day of the entry while Seals's dog barked "hysterically" also do not support the claim the evidence was insufficient to support the juvenile court's finding he entered the home with an intent to commit larceny.

The evidence established minor entered Seals's home through a bathroom window. He was found by Seals in the bathroom tub holding a piece of window screen in his hand. When asked why he was in the home, minor had no legitimate explanation. Additionally, as soon as Seals stated she was calling the police, minor fled the home. Although on appeal minor claims his statement that " 'David told me to do this' " supports a finding he entered the home on a dare or as part of a prank, at trial minor testified that he was not in the home and was misidentified. Further, even if minor was

told to enter the home by "David," that does not suggest he entered without the requisite intent. In addition, a daytime burglary would be more likely to find no one home, depending on the day. As in the above-mentioned cases, it is reasonable for a trier of fact to infer from minor's unusual conduct that minor had felonious intent in entering the residence, even though his actions were unsuccessful due to interruption by Seals. Accordingly, circumstantial evidence supports the juvenile court's finding that minor entered the home with an intent to commit larceny.

Minor argues that reliance on the cases where the appellate courts have stated intent can be inferred solely from unlawful entry or flight from the victim's home is misplaced because "those courts have not actually upheld a finding of specific intent based on unlawful entry [or flight] alone." (See *People v. Martin*, *supra*, 275 Cal.App.2d at pp. 336, 339 [evidence showed the drug-addicted defendant was found running from a doctor's office in which a drug cabinet had been disturbed and pills were scattered]; *People v. Stewart*, *supra*, 113 Cal.App.2d at p. 691 [the defendant entered the home in middle of night, ate the victim's food, gave away or traded the victim's property, and offered no explanation for his actions]; *People v. Martone* (1940) 38 Cal.App.2d 392, 393-394 [the defendant broke a stranger's door at 2:00 a.m. and had no explanation for why he was there or had a wrench]; *People v. Moody*, *supra*, 59 Cal.App.3d at p. 363 [the defendant entered a home at night and was found with his arms outstretched toward a 15-year-old girl in a night gown].) Minor's attempts to distinguish the above-cited cases are futile because a trier of fact could reasonably conclude minor entered the Seals residence

9

with the requisite intent without additional factual circumstances as suggested by minor. Moreover, even if we were to agree that, given the absence of any additional circumstances, a trier of fact may just reasonably have concluded that minor entered the home on a dare without the requisite intent, reversal is not warranted. (E.g., *People v. Lewis* (2001) 25 Cal.4th 610, 644.) As we have stated, a reviewing court's opinion that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment. (*People v. Lewis*, at pp. 643-644; *People v. Kraft* (2000) 23 Cal.4th 978, 1053-1054.) The juvenile court in this case disbelieved minor's story, and our role on appeal is simply to determine whether its findings in support of the burglary convictions are supported by sufficient evidence. The record here contains substantial circumstantial evidence supporting the juvenile court's finding on the question of minor's felonious intent.

We are also unconvinced by minor's attempt to compare the circumstances of his case to those in *In re Leanna W.* (2004) 120 Cal.App.4th 735, in which the Court of Appeal concluded there was insufficient evidence of a minor's intent to steal from her grandmother's home for purposes of a first degree burglary conviction. (*Id.* at pp. 740-742.) There, the minor, a 17-year-old ward who had run away from her juvenile placement, entered her grandmother's locked and vacant home without permission to throw a going-away party before she was to be sent to her mother's home. (*Id.* at pp. 737-738.) A neighbor observed 30 to 40 people at the house and told the minor the partygoers needed to leave; the minor agreed and everyone but a few friends left, but the

next day the neighbor saw the minor and another boy in the house and told them again to leave. (*Id.* at p. 739.) The minor's grandmother later discovered several items were missing, including six bottles of liquor, and her Direct TV bill included charges for a boxing match and six adult movies on the date of the minor's party. (*Id.* at p. 740.) The juvenile court found the burglary allegations true, noting that utilities were used and alcohol was consumed in the minor's presence. (*Id.* at p. 738.)

The Court of Appeal, however, found this insufficient to create an inference of felonious intent, observing that the trial court had also found it could not tell what the minor did while she was at the home. (*In re Leanna W.*, *supra*, 120 Cal.App.4th. at p. 741.) Because the evidence did not show the minor actually took or consumed alcohol, the Court of Appeal held the mere possibility that the minor drank raised only suspicion about her intent that did not form a sufficient basis for an inference of fact. (*Ibid.*) The Court of Appeal also observed that entry with intent to use a home's utilities could form the basis for a burglary conviction. However, it held that while it was clear the minor had entered the grandmother's home without permission and the evidence indicated some use of utilities, the evidence also showed many other people were in the house, and the prosecution had presented no competent evidence to show she actually used the utilities or that she entered the house to use the utilities. (*Id.* at pp. 741-742.) Under these circumstances, the Court of Appeal held there was insufficient evidence to support a finding that the minor committed a burglary of her grandmother's home.

In this case, the prosecution's evidence of minor's intent is not sheer speculation. Unlike the circumstances of *In re Leanna W.*, minor was the only person seen in Seals's house at the time of the alleged burglary. There was no evidence of any relationship or acquaintance between minor and any occupant of the residence. There was no suggestion of any legitimate reason for minor to be inside the home. Minor entered the home without permission through the bathroom window and was caught in the bathroom tub holding part of the bathroom window screen. He had no reasonable legitimate explanation to be in the home and immediately fled the home when Seals stated she would have to call the police. Seals identified minor as the only person who entered her home without knocking, announcing his presence or giving any reasonable explanation. *In re Leanna W.* does not compel us to reverse his burglary conviction on grounds of insufficiency of the evidence.

III

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ_____
P. J.

We concur:


HOLLENHORST_____
J.


McKINSTER_____
J.

12